UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
  LAMAR HUDSON,                         :
                                            :
                 Plaintiff,        :
                                            :      **MEMORANDUM DECISION AND**
         -against-              :      **ORDER**
                                            :
  ALAN GERSON, ESQUIRE; ABROM      :      23-cv-8876 (BMC)
  BADALOV; KHUSIAL BHAGROO;         :
  HUDSON SEARCH; and SAXONY TITLE   :
  COMPANY,                             :
                                            :
                       Defendants.    :
--------------------------------------------------------- X

**COGAN**, District Judge.

       This is a purported RICO case in which plaintiff contends that defendants conspired to

sell him a house by not telling him it was a single-family house when what he wanted was a two-

family house. Despite two amended complaints, plaintiff has failed to come close to alleging

sufficient facts to make out a plausible RICO claim and defendants' motions to dismiss are

therefore granted. The Court either lacks supplemental all of plaintiff's state law claims, or at

least one of them, and to the extent it may have supplemental jurisdiction over any of plaintiff's

state law claims, it declines to exercise it.

**SUMMARY OF SECOND AMENDED COMPLAINT**

       The factual allegations in the stream-of-consciousness, typographical error-laden second

amended complaint ("SAC") are set forth below, including those gleaned from exhibits annexed

to it. See United States ex rel. Foreman v. AECOM, 19 F.4th 85, 106 (2d Cir. 2021) (quoting

DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010)). However, I have stripped

away the conclusory assertions and characterizations, which comprise most of the SAC, as those

are not to be considered in determining the plausibility of a claim.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The case arises from a real estate transaction for a residential property located in Queens that plaintiff wanted to buy for investment purposes.  Plaintiff was the buyer and defendant Badalov, apparently a professional in the real estate business, was the seller.  Plaintiff advised Badalov that he wanted to buy a vacant two-family home, clear of encumbrances.

Badalov advised plaintiff that he should have an attorney to represent him in the process and recommended (or "directed" plaintiff to hire) Badalov's "personal attorney," defendant Gerson.  Badalov told plaintiff that Gerson "deals with investors a lot and would make things quick and easy."  Gerson and Badalov are also members of a real estate firm created by Badalov called Icon Realty Homes LLC, a fact which they did not disclose to plaintiff.

The SAC generally alleges that there was an ongoing scheme by which defendants Hudson Search and Saxony Title, which are apparently title companies, would prepare false Certificates of Occupancy ("COO"s) for properties that Badalov was selling in exchange for kickbacks from a sale, and that Gerson would share legal fees received from the buyer with Badalov.  There is an allegation that Gerson and Badalov also received kickbacks from Icon Realty that "exceed[] what is legal, as am atter [sic] of law . . . ," although it is not alleged what role Icon Realty had in any transactions or what plaintiff means by "kickbacks."

As that scheme unfolded here, plaintiff bought the property and paid legal fees to Gerson. No letter of engagement or other documents were signed between them.  Both Gerson and Badalov represented to plaintiff that the property was a two-family home, although they knew that it was a one-family home.  However, the SAC then contradictorily alleges that Gerson represented to plaintiff in a voice recording that the property was listed as a one-family home.

The SAC further alleges that Gerson and Badalov had "someone they knew" on the inside at Hudson Search and Saxony Title "fabricate" a COO showing the home as a one-family home. Gerson and Badalov "cropped out" the source of the COO (presumably Saxony Title, although it is not alleged why the source needed to be "cropped out" to further the scheme).

The SAC's allegations that Hudson Search and Saxony Title "prepared" the COO is contradicted both by common sense and by documents annexed to the SAC. Title companies do not prepare COOs. COOs are prepared and filed by the New York City Department of Buildings. See NYC Dep't of Buildings, Certificate of Occupancy, NYC Buildings: Property or Business Owner: Working on Your Project, https://www.nyc.gov/site/buildings/property-or-business-owner/certificate-of-occupancy.page (last visited June 18, 2025). Instead, plaintiff appears to be referring to, and has annexed to the SAC, reports prepared by Hudson Search and/or Saxony Title relaying what the public record showed about any certificates of occupancy on the property.

Those reports tell a different story than the SAC. They in no way certify that a legally permissible use of the property was as a two-family home. Rather, the Hudson Search report states that there is "[n]o Certificate of Occupancy on file for the Original Construction according to Building Department records." That is because, the report explains, the "[b]uilding [was] erected prior to enforcement of Certificate of Occupancy regulations." The report concludes with helpful information:

> New Building #1022 For: TWO STORY BUILDING, TWO FAMILY DWELLING, completed on 11/27/1906
>
> According to Department of Buildings Index Records and Property Profile Overview, there are no approved alteration plans filed to obtain a new Certificate of Occupancy for the above mentioned property.

The "cropped out" COO report, presumably prepared by Saxony Title, which plaintiff has also attached to the SAC, says exactly the same thing, except without the title company letterhead.

In any event, the SAC further alleges that a couple of weeks after issuance of this "false" COO, the title company that was actually insuring the title, Millenium Abstract, issued a COO which showed the property as a one-family home. Millenium gave this search to Gerson and Badalov, but they did not give it to plaintiff.

Again, the Millenium COO search report, also annexed to the SAC, differs from its characterization in the SAC. For the most part, it is consistent with the other title companies' reports, showing that there is no COO for this property because the building was erected prior to the enforcement of the regulations concerning certificates of occupancy, which, as the other title reports explain, was in 1906.

The Millenium report then contains some additional information that the other title reports did not address – the tax status of the building. It is not clear why Millenium chose to include tax status information in a COO report, but, in any event, the tax search showed that in 1937, the New York City Department of Finance had classified the building as a "ONE FAMILY DWELLING." The report goes on to say that on an unspecified date thereafter, the classification had been changed to "B3 – TWO FAMILY DWELLINGS: Converted."

In other words, the Finance Department had, as of 1937, classified the building *for tax purposes* as a one-family dwelling and then changed its tax status to a two-family dwelling. The Millenium report concludes by offering this crucial, if not obvious, context: "The Department of Finance's building classification information shows a building's tax status, which may not be the

same as the legal use of the structure.  The legal use of the structure is determined by the New York City Department of Buildings."

The SAC goes on to allege that plaintiff purchased the home in reliance on the "false" COO created by Hudson Search and Saxony Title for $560,000, with $190,000 "in closing costs, transfer tax, etc."  In buying the property, "[p]laintiff was not aware that the property in question was non-family [sic] at the time of purchase."

After purchasing the property, plaintiff indicated to Gerson and Babalov that he needed "a license [sic] general contractor" for renovations on the property, although he did not ask them for help in finding one.  Nevertheless, Gerson invited defendant Khusial Bhagroo to a meeting that he, Gerson, was having with plaintiff.  Bhagroo was a regular customer of Gerson and Badalov, doing some contracting work for them on "auction properties."  Gerson also represents Bhagroo and his family, which Gerson did not disclose to plaintiff, and Bhagroo gets referrals from Gerson and Badalov "on delas [sic] they close."

Bhagroo told plaintiff that he works "under" a company called Integrated Home Renovations because it was a licensed contractor.  Based on that representation, plaintiff entered into a Joint Venture Agreement with Bhagroo.  Although the Joint Venture Agreement provided that both plaintiff and Bhagroo would "invest money to finance conduct of the operation," Bhagroo did not invest, nor did he fully perform his contractor duties.  Only after plaintiff had paid Bhagroo $211,069 in fees did plaintiff learn that Bhagroo was not a licensed contractor. Plaintiff had to pay out of pocket to complete the work.

Finally, the SAC alleges Gerson and Badalov "have been involved in this type of fraudulent behavior" as shown by two cases brought in state court, but other than citing to the name and index number of those cases, and stating that in one of those cases, "defendants

represented that the title was free and clear knowing that it was not," there are no further allegations about the substance of those two cases.[1]

The SAC contains conjoined counts. "Count I and II" appear to be RICO claims against Gerson and Badalov. "Counts III and IV" appear to be RICO claims against Hudson Search and Saxony Title. "Counts V and VI" are for "Fraud in the Inducement" against Badalov and Gerson. Count VII is for "Fraud in the Inducement" against Bhagroo. "Counts VIII and IX" are for negligent misrepresentation against Badalov and Gerson. Count X is for negligent misrepresentation against Bhagroo. Count XI is for breach of fiduciary duty against all defendants. Count XII is for "Implied Warranty of Workmanlike Conduct" against Bhagroo.

## DISCUSSION

Defendants Badalov and Gerson have moved to dismiss based on plaintiff's lack of standing, this Court's lack of subject matter jurisdiction, and plaintiff's failure to state a claim on which relief can be granted. This Court first addresses whether plaintiff's RICO claims are "colorable federal claim[s]," because RICO claims that are "wholly insubstantial and frivolous" are insufficient to provide this Court with subject matter jurisdiction under 28 U.S.C. § 1331. Taldone v. Barbash, No. 14-cv-2147, 2014 WL 1800794, at *5 (E.D.N.Y. May 5, 2014).

### I.    RICO Claims

To state a RICO claim, a plaintiff must plead facts sufficient to support (1) a RICO violation, (2) an injury to his business or property, and (3) a proximate causal connection

---

[1] Defendants' original motion to dismiss, which concerned the first amended complaint, included a request for sanctions based on plaintiff's inclusion of these two cases in that complaint. Badalov is not a defendant in either case (one of the cases involves a different defendant Badalov), and Gerson is only named in his capacity as an escrow agent in both cases. Furthermore, one of the cases was discontinued less than a month after it was filed. Plaintiff included allegations related to these cases again in the SAC. The Court declines to impose sanctions because, although these allegations certainly border on frivolous, plaintiff included allegations in the SAC related to the Badalov family's involvement in the purported enterprise, such that cases against other Badalovs, and cases that name Gerson but not Badalov, could be relevant to his claims.

between the injury and a substantive RICO violation.  See 18 U.S.C. §§ 1962(c), 1964(c); Holmes v. Secs. Inv'r Prot. Corp., 503 U.S. 258, 265-68 (1992).  A RICO violation requires allegations of "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity."  Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 119 (2d Cir. 2013) (quoting Anatian v. Coutts Bank (Switz.) Ltd., 193 F.3d 85, 88 (2d Cir. 1999)).  "The pattern of racketeering activity must consist of two or more predicate acts of racketeering."  Id. (citing 18 U.S.C. § 1961(5)).

An enterprise under 18 U.S.C. § 1961 includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  "The Supreme Court has interpreted this definition to include 'a group of persons associated together for a common purpose of engaging in a course of conduct[.]'"  Liberty Mut. Ins. Co. v. Blessinger, No. 06-cv-391, 2007 WL 951905, at *9 (E.D.N.Y. March 27, 2007) (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)).

As defined in the RICO statute, "racketeering" is broadly defined to include "any act which is indictable under . . . section 1341 [of title 18] (relating to mail fraud), section 1343 (relating to wire fraud), [and] section 1344 (relating to financial institution fraud)."  18 U.S.C. § 1961(1).  "To establish a 'pattern' of racketeering activity, a plaintiff must plead 'at least two predicate acts, and show that the predicate acts are related, and that they amount to, or pose a threat of, continuing criminal activity.'"  4 K & D Corp. v. Concierge Auctions, LLC, 2 F. Supp. 3d 525, 535 (S.D.N.Y. 2014) (quoting Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir. 1997)) (cleaned up).  "Predicate acts are 'related' for RICO purposes when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'"

Schlaifer Nance, 119 F.3d at 97 (quoting H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 240 (1989)). "A plaintiff must allege, at a minimum, that 'a defendant personally committed or aided and abetted the commission of two predicate acts.'" 4 K & D Corp., 2 F. Supp. 3d at 537 (quoting McLaughlin v. Anderson, 962 F.2d 187, 192 (2d Cir. 1992)).

Where, as here, the complaint alleges fraud, the allegations are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Rule 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). And in RICO fraud cases, "Rule 9(b) calls for the complaint to specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." 4 K & D Corp., 2 F. Supp. 3d at 537-38 (quoting Moore v. PaineWebber, Inc., 189 F.3d 165, 173 (2d Cir. 1999)). But for the "other elements of a RICO claim – such as non-fraud predicate acts or . . . the existence of an 'enterprise' – a plaintiff's complaint need satisfy only the 'short and plain statement' standard of Rule 8(a)." D. Penguin Bros. Ltd. v. City Nat. Bank, 587 F. App'x 663, 666 (2d Cir. 2014) (citing McLaughlin, 962 F.2d at 194).

Moreover, given the "powerful incentive for plaintiffs to attempt to fit garden variety fraud claims within the standard of civil RICO" due to "the allure of treble damages, attorney's fees, and federal jurisdiction," courts must "scrutinize civil RICO claims early in the litigation to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." Holmes v. Parade Place, LLC, No. 12-cv-6299, 2013 WL 5405541, at *14 (S.D.N.Y. Sept. 26, 2013) (quotation and citations omitted).

Applying these principles to the instant case, plaintiff has failed to plead even a single element of a RICO claim.  First, I cannot find a single fraudulent statement, pled with particularity, alleged in the SAC.  The closest plaintiff gets is to allege that "[t]he primary misrepresentation is the fraudulent Certificat [sic] of Occupancy that was prepared by representatives of Hudson Search and Saxony Title Company for Defendants."  But as shown in the preceding section of this decision, not only is it clear that Hudson Search and Saxony Title did not prepare any Certificates of Occupancy (because title companies do not do that), but their reports on the Certificates of Occupancy prepared by the Buildings Department do not represent that the Department of Buildings had issued a COO for a two-family home.  Consistent with the Millenium title report, the Hudson Search and Saxony Title reports (assuming Saxony Title prepared what plaintiff refers to as the "cropped out" report) simply state that the dwelling is being used as a two-story dwelling and that there is no COO for it.  Nowhere does the SAC allege any representation from Gerson or Badalov in which they told plaintiff that there was an existing two-family COO for the building.

In addition, plaintiff has not alleged facts showing the existence of an "enterprise" or a "pattern of racketeering activity."  An allegation that Gerson and Badalov "have been involved in this type of fraudulent behavior," without more, is far from sufficient to demonstrate a pattern. And because plaintiff has not identified any false statements in the COO reports upon which plaintiff relies for his "enterprise," there is no racketeering activity that could support a finding that an illegal enterprise exists.  Throwing in the word "kickbacks," with no specificity as to how much was paid, when it was paid, or whether any payments to Hudson Search or Saxony Title were for the title reporting services they rendered, does not help plaintiff's claim at all. Finally,

there are no RICO predicate acts alleged in the complaint.  There is no reference to Title 18, or to any facts that would sufficiently allege mail fraud, wire fraud, or bank fraud.

The only potential claim I can glean from the SAC, and it is a weak one at that, is a legal malpractice claim against Gerson for not advising plaintiff that there was no two-family COO for the building.  That claim is augmented by the lack of an engagement letter, and the fact that Badalov had a more extensive relationship with Gerson than plaintiff apparently knew.  But it is undercut by the fact that, as plaintiff specifically pleads, Badalov told him that Gerson was his (Badalov's) "personal" attorney, as well as by the absence of any allegation in the SAC that plaintiff advised Gerson or Badalov that he only wanted to purchase the property if it could legally be used as a two-family home, or that they confirmed such information to him.  Rather, the SAC is perfectly consistent with the house being set up for use as a two-family home, with no discussion of the need – indeed, the SAC does not even allege if there *was* a need under New York City law – for a two-family COO.

In any event, regardless of whether plaintiff has a legal malpractice claim against Gerson, the SAC comes nowhere near alleging a RICO claim.  Defendants' motion to dismiss it is therefore granted.

## II.    State Law Claims

Section 1367 of the Judicial Code provides that:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

### A.    Supplemental jurisdiction is not available

However, as noted above, in some cases, a RICO claim can be so poorly pled that not only does it fail to state a claim, but it fails to properly invoke federal jurisdiction.  See Taldone, 2014 WL 1800794, at *5.  And when the Court lacks subject matter jurisdiction over the federal claim, then it has no basis for asserting supplemental jurisdiction under 28 U.S.C. § 1367. Cohen v. Postal Holdings, LLC, 873 F.3d 394, 396 (2d Cir. 2017) ("a federal district court cannot exercise supplemental jurisdiction over state-law claims unless it has subject-matter jurisdiction over the federal claims originally presented.").  In other words, when the purported federal claim is so insubstantial that the court's federal subject matter jurisdiction has not been invoked, it is not a matter of discretion as to whether to hear related state law claims – the court lacks the power to hear them.

For the reasons set forth above, the case presents the kind of "wholly insubstantial and frivolous" claim, Taldone, 2014 WL 1800794, at *5, that does not invoke federal subject matter jurisdiction.  There are simply no elements of RICO plausibly set forth – just conclusory allegations. To allow the purported RICO claim to support the entire case in federal court would be to effectively transform this Court into a state court.  There is no federal subject matter jurisdiction for this Court to do that.

### B.    Supplemental jurisdiction would not save plaintiff's state law claims

Even if plaintiff's RICO claim was deficient merely because it failed to state a claim as opposed to failing to invoke this Court's subject matter jurisdiction, there are parts of it that this Court could not hear, and the rest of it, the Court would not hear.

### 1. The claims against Bhagroo

The threshold requirement for invoking supplemental jurisdiction is that the state law claims must arise from the same transaction or occurrence as the federal claims. To be so related, the federal and state claims "must derive from a common nucleus of operative fact." United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966). However, "a mere causal relationship between the events underlying claims is, by itself, generally 'insufficient to confer supplemental jurisdiction.'" Cheng v. Wong, No. 24-cv-1507, 2024 WL 2962142, at *4 (E.D.N.Y. June 12, 2024) (quoting Envisn, Inc. v. Davis, No. 11-cv-12246, 2012 WL 1672887, at *3 (D. Mass. May 11, 2012)); see also Salei v. Boardwalk Regency Corp., 913 F. Supp. 993, 999 (E.D. Mich. 1996) (no supplemental jurisdiction where state and federal claims "appear[ed] to be causally related" but did not otherwise "share any of the same 'operative facts'").

Under that standard, this Court has no supplemental jurisdiction over the SAC's Counts VII, X, and XII, the state law fraudulent inducement, negligent misrepresentation, and warranty of workmanlike conduct claims, respectively, against Bhagroo. It is no accident that Bhagroo is not mentioned in the RICO claims – he has nothing to do with them. The RICO claims purport to allege a scheme between Gerson, Badalov, Hudson Search, and Saxony Title to get plaintiff to buy a house he didn't want. The claims against Bhagroo are based on his alleged misrepresentation that he was a licensed general contractor and the defective work he performed once he induced plaintiff to enter into a joint venture. All of that occurred after plaintiff had purchased the property, and plaintiff does not allege it was a goal of the Gerson-Badalov-Hudson Search-Saxony Title RICO scheme to get plaintiff to buy the house so that he would then hire Bhagroo to work on it. Plaintiff's engagement of Bhagroo, the alleged misrepresentation, Bhagroo's inadequate contracting work under his joint venture with plaintiff, and plaintiff's

payment to Bhagroo do not arise out of the same transaction or occurrence.  They may be causally related in the sense that if plaintiff hadn't bought the house, he wouldn't have met Bhagroo, but that does not make plaintiff's joint venture with Bhagroo part of the same nucleus of operative fact as the RICO scheme.

The same is true with respect to Count XI, the state law claim for breach of fiduciary duty against all defendants, at least to the extent it includes Bhagroo.  That Count merely generally alleges breach of fiduciary duty by reference to all of the allegations that precede it, except that as to Bhagroo, it alleges that "Defendant Khusial Bhagroo clearly and unequivocally breached the Joint Venture Agreement between him and Plaintiff not performing his contractor duties or investing any money into the project as required by the agreement."  Again, that does not arise out of the same nucleus of operative facts as the RICO claims, and I therefore lack subject matter jurisdiction over it.

## 2.  State law claims against the remaining defendants

Although the state law claims against the other defendants, or at least parts of them, arise out of the same nucleus of facts as the RICO claims, and thus I would have subject matter jurisdiction over them if the RICO claim had validly invoked this Court's subject matter jurisdiction, I would decline to exercise supplemental jurisdiction because I am dismissing the RICO claims.  A "district court[ ] may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  "Once a district court's discretion is triggered under [section] 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity,' . . . in deciding whether to exercise jurisdiction."  Kolari v. N.Y.-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).  "The

exercise of supplemental jurisdiction is within the sound discretion of the district court." Lundy, 711 F.3d at 117 (citing Cohill, 484 U.S. at 349-50). "[I]n the usual case in which all federal[ ]law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state[ ]law claims." Kolari, 455 F.3d at 122 (elipses in original) (quoting Cohill, 484 U.S. at 350 n.7); see also Donato v. Serv. Experts, LLC, No. 17-cv-436, 2018 WL 4660375, at *2 (N.D.N.Y. Sept. 28, 2018) ("Where, as here, a plaintiff's federal claims will be dismissed before trial, a district court should generally decline to exercise supplemental jurisdiction over any state law claims absent exceptional circumstances." (quoting B.A. v. City of Schenectady Sch. Dist., 209 F. Supp. 3d 515, 528 (N.D.N.Y. 2016)).

All relevant considerations point in favor declining supplemental jurisdiction. The case is in a posture well before trial. The RICO claims were so weak that they should not serve as predicates for transforming what is, at best, a state court legal malpractice or garden variety fraud action into a federal case. There is no inconvenience to the plaintiff in taking this case to Queens Supreme Court where it should have been in the first place.

## CONCLUSION

Defendants' motion to dismiss the RICO claims is granted for lack of subject matter jurisdiction or, alternatively, failure to state a claim.[2] The claims against Baghroo are dismissed for lack of subject matter jurisdiction. The remaining state law claims against the other defendants are dismissed for lack of subject matter jurisdiction or, alternatively, because the Court declines to exercise supplemental jurisdiction to hear those claims.

---

[2] The docket does not reflect service on Hudson Search or Saxony Title. Nevertheless, it is well-established that when a court dismisses some defendants on grounds applicable to other defendants, those other defendants may be dismissed as well. See Hecht v. Com. Clearing House, Inc., 897 F.2d 21, 26 n.6 (2d Cir. 1990); Black v. Blackmun, No. 11-cv-2372, 2011 WL 6019394, at *2 n.3 (E.D.N.Y. Dec. 1, 2011). Accordingly, the RICO claims are dismissed as to Hudson Search and Saxony Title.

**SO ORDERED.**

_Brian M. Cogan_

_____
U.S.D.J.

Dated:  Brooklyn, New York
        June 25, 2025